### J. J. MONTGOMERY *v.* THE STATE.

1. FORGERY.— CRIMINAL INTENT is a necessary and essential constituent of the crime of forgery, and, like every other issue in the case, must be conclusively established by the evidence.
2. SAME — EVIDENCE.— See this case for evidence *held* insufficient to disclose a criminal intent.

APPEAL from the District Court of Cooke. Tried below before the Hon. C. C. POTTER.

The forgery for which the indictment in this case was presented, and of which the defendant was convicted, consisted in writing, without lawful authority, the name of "A. H. Montgomery" across the back of a bank check for $60, which he cashed at the banking house of Putman, Chambers & Co., Gainesville, Cooke county, Texas. His punishment was assessed by the jury at imprisonment in the penitentiary for two years.

The instrument upon which the name of A. H. Montgomery was alleged to have been written by the appellant without authority, was as follows:

"No. 21,526.    NATIONAL BANK OF LANCASTER.

"LANCASTER, KY., Nov. 22, 1880.

"Pay to the order of A. H. Montgomery, sixty dollars.

"To the Mercantile National Bank, New York city.

"WM. H. KINNAIRD, Cashier.

"WM. H. KINNAIRD, Cash'r.

"GEORGE DENNY, Pres't."

The names of A. H. Montgomery and A. M. Montgomery were indorsed across the back.

A. H. Montgomery testified, for the State, that he lived in Denton county, one and a half miles south of Pilot Point. He received his mail matter at Pilot Point. The witness was originally from Kentucky. His wife's name was Mattie Montgomery. The witness was familiar with the signature of the cashier of the Lancaster, Kentucky, National Bank. The check in question being exhibited to the witness, he testified that it was sent to him by his wife's brother James, as rent for a small piece of land. The first the witness ever saw of the check was when it was sent to him by Putman, Chambers & Co., with a letter asking if the indorsements on the back were genuine. The two signatures " A. H. Montgomery " and " A. M. Montgomery " are not the signatures of the witness. He did not sign this check nor authorize the defendant nor other person to sign it for him.

L. B. Edwards testified, for the State, that the first time he saw the defendant was about the last of December, 1880, when the latter came into the banking house of Putman, Chambers & Co. and cashed a check for $60. The witness recognized the check shown him as the one he, as cashier, cashed for the defendant. The defendant wrote the two signatures, " A. H. Montgomery " and " A. M. Montgomery," on the back of the check. When the defendant came to the bank and exhibited the check, the witness told him to indorse it by writing his name across the back. He wrote the indorsement " A. M. Montgomery," and the witness told him that the check was payable to " A. H. Montgomery," and not to " A. M. Montgomery." Defendant said that it ought to be A. M. Montgomery. The witness told him there must be some mistake if his name was A. M. Montgomery. The defendant then said, " Yes, it should be ' A. M. Montgomery;' " he had a letter, which he looked at and then wrote the name ' A. H. Montgomery.' The witness understood the defendant to be A. M. Montgomery and

that the check was his.   The witness paid the defendant the money on the check and sent it to New York.   It was soon returned with information that the bank at Lancaster, Kentucky, refused to pay it.   It was marked "forged indorsement."

On cross-examination, the witness stated that he could not remember that he told the defendant that clerks in banks sometimes make mistakes.   As a fact, they sometimes do make mistakes.   When checks are drawn on Putman, Chambers & Co.'s bank in favor of the wife it is common for the husband to sign his wife's name, but such practice is not permitted with bills of exchange. The defendant did not say that his name was A. M. Montgomery.   The witness inferred it from the transaction.

J. A. Bolton testified, for the State, that he was the sheriff of Cooke county, Texas, and arrested the defendant on this charge in December, 1881.   He told the defendant that he wanted him to go to Gainesville about a check.   Defendant said that he knew nothing about a check.   After studying awhile he said that he had cashed a check there for his daughter.   The defendant was apparently a very poor man.   He had not been able to give his bond of $500.

Miss Mollie Montgomery testified, for the defense, that the defendant was her father.   They live five miles west of Pilot Point, and Pilot Point is their postoffice.   There is a private neighborhood box at Baker's store, about a quarter of a mile from defendant's house, where the defendant's family usually got their mail matter.   Some time in October, 1880, word was sent her by her little brother that there was a letter for her at Baker's store. She went to the store and Mr. Baker gave her a letter containing a check.   That letter the witness had at the trial. The direction on the envelope of this letter was "Miss Mollie Montgomery;" the inside address was "Dear sis-

ter," and it was signed "Your brother Jimmie." The letter was read in evidence, and contained mention of but two matters which the witness did not understand. In the letter the writer stated that "Mr. Dunn's folks were well," and that, in sending the check for the rent money of the witness's land, he had "reserved two dollars to pay for the Advocate next year." The witness did not know "Mr. Dunn's folks," nor could she understand why two dollars had been retained to pay for the Advocate. She had a brother Jim living in Kentucky, who attended to her father's business there. In writing to the witness for the family he usually signed his letters "Your brother Jim," and generally commenced them "Dear sister." Other allusions in the letter were to persons and matters in Kentucky, with which the witness and the others of the family were perfectly familiar, and from them the witness entertained no doubt that the letter was intended for her. Her father gets money from Kentucky, and was expecting some when the letter arrived. Her mother's name was Cassey Ann Montgomery. Her maiden name was Howard, which she still retained. All the family thought the check was intended for their mother, and entertained no doubts concerning the name "A. H. Montgomery." There were some words in the letter which could not be made out. It was badly written, in dim ink, but in the handwriting of the witness's brother,— so much so that it was not questioned on that ground. The letter was shown to several neighbors, many of whom advised that the check be cashed.

Either the witness or her mother gave the check to the defendant, one day when he was coming to Gainesville, to get it cashed. The witness presumed that he did cash it, as he came back with the money. None of the family heard that anything was wrong with the check until the defendant was arrested, some two months before this trial. This letter was lost at the time of the preliminary

trial, but had been since found.  The full name of the
witness was Mary Jane Montgomery, but she was gen-
erally addressed as Mollie Montgomery.

Cross-examined she stated that she remembered her
father receiving money from Kentucky but once, and that
was in 1876, in San Saba county, shortly after they came
out to Texas.  The amount was about $100, but the wit-
ness could not say whether it came by draft or postoffice
money order.  Her father, the defendant, had four farms
in Kentucky.  One is called the Bloomington, one the
White Oak, one the Red Brush, and the other the Blue
Grass farm.  Her father had said that he would not take
$1,000 for his Bloomington farm.  A recent letter from
the witness' uncle announced the sale of the Blue Grass
farm for $1,000.  The defendant now owns but one team
of horses, and three cows and calves, and raised some
three or four bales of cotton this year.

Re-direct, the witness stated that she wrote her brother
acknowledging the receipt of the letter and contents.  She
had written to her brother Jim since the defendant's
arrest, and is daily expecting a reply.

The defense then read in evidence the written testi-
mony of Mrs. Kate Cassity, daughter of the defendant,
taken before an examining court.  The substance of it
was that, about a year before this trial, her sister Mollie
Montgomery received a letter from their brother Jim in
Kentucky, enclosing a check.  In general detail, so far
as her memory served her, this witness corroborated the
testimony of Miss Mollie Montgomery, concerning the
letter, its contents, and its enclosure of the check.  Her
sister, the witness stated, was sometimes addressed as
Miss Mary, sometimes as Miss M. J., but generally as Miss
Mollie Montgomery.  Her mother's full name was Cassie
Ann Howard Montgomery.  Her father was expecting a
remittance of money from Kentucky at the time that this
letter and check were received.

John M. Montgomery, a son of the defendant, testified that he arrived home from Arkansas two or three days after his sister Mollie received the check. He saw the letter and the envelope. The latter was directed to Miss Mollie Montgomery. There were some things in the letter which were understood, and the letter and check were shown by the family to several neighbors, with whom they advised about the matter, relating to them all of the circumstances. Mr. Devault, among the number, pronounced the check all right. The witness thought so too, and offered $55 for it. The defendant has land in Kentucky in charge of two sons, Jim and Tom. He has many other relatives in that State. His father's (the defendant) name is J. J. Montgomery, that of his sister M. J. Montgomery, and that of his mother C. A. H. Montgomery. He knew of no one in his family named A. M. Montgomery.

The defendant brought a great deal of money with him to Texas, but had spent it traveling around. The witness only knew of his own knowledge of his father receiving money from Kentucky but once since they left there, but had heard him say that he received money from there a number of times.

A. J. Devault testified, for the defense, that he was at the defendant's house when they had the letter and check, and saw them at that time. He came with the defendant to Gainesville, when the latter cashed the check. The letter was badly written, in pale ink. The defendant and his family made no secret about the receipt of the letter. It was generally known in the neighborhood.

Cross-examined the witness stated that the envelope was addressed to Mrs. Mollie Montgomery, and not to Miss Mollie Montgomery. He called attention to the name of A. H. Montgomery in the check. The defendant has lived near the witness for two years, is a very poor man and generally very hard up for money. The witness cannot read writing very well. There are some hands which

he cannot read at all. This letter was directed in a very dim, and a very bad hand. The witness took the super-scription to be Mattie Montgomery.

The written testimony of A. T. Cassity before the examining court was read. His statement was that a year before he lived about a quarter of a mile distant from the defendant. Miss Mollie Montgomery received a letter enclosing a check for $60. The witness did not remember to whom it was payable.

A. W. Hamner testified that in July or August before the receipt of the letter in December, the defendant told the witness that he wanted to buy a couple of horses from him, and that he could get or was expecting money from his boys in Kentucky. He afterwards saw the defendant at Baker's store, when the defendant told him he had received money but not enough to buy the horses, but that he wanted to buy a cow, which the witness sold him.

H. Martin testified that he knew the general reputation of the defendant in the community in which he lives, and that it was good.

J. M. Baker testified that he was the proprietor of Baker's store. The mail for the neighborhood is sent to his store for distribution from Pilot Point. The Montgomerys receive and mail letters at the witness's store. He had noticed letters addressed to James Montgomery both before and since the letter and check were received by the Montgomery family. Letters are usually addressed to "Miss Montgomery," "Miss Mollie Montgomery." The defendant's general reputation in the community was good. He lived about as well as the "common run" of farmers.

*R. Sarlls,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J. A mature consideration of the evidence adduced on the trial below, as the same is shown by the

record before us in this case, has failed to convince us of the justice and correctness of the verdict and judgment to that degree of certainty as that we would feel warranted in permitting the conviction to stand as a precedent. There is certainly a strange conjunction of facts, circumstances and coincidences in behalf of defendant which go far to deprive the transaction of that criminal intent essential to constitute the crime charged, and another trial may lead to the development of other facts of a more conclusive and satisfactory character.

Because, in the opinion of the court, the evidence is insufficient to support the judgment, the same is hereby reversed and the cause remanded for a new trial.

*Reversed and remanded.*